IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 16-cr-00119-PAB
Civil Case No. 18-cv-00055-PAB

UNITED STATES OF AMERICA,

     Plaintiff,

v.

RICHARD HENNIS,

     Defendant.

_____

**ORDER**
_____

Defendant Richard Hennis has filed, *pro se*, a Motion to Vacate, Set Aside, or

Correct Sentence Pursuant to 28 U.S.C. § 2255 ("§ 2255 motion") [Docket No. 174].

Mr. Hennis also filed Defendant's Motion to Stay and Leave to Amend His 2255 Motion

Pursuant to F.R.C.P. 15(D) ("Motion for Leave to Amend") [Docket No. 186] and Motion

to Dismiss Indictment Pursuant to Fed. R. Civ. P. 12(b) for Lack of Subject Matter

Jurisdiction and Violation of Constitutional Rights ("Motion to Dismiss the Indictment")

[Docket No. 187].  The Court construes Mr. Hennis's filings liberally because they were

filed at a time when he was not represented by counsel.  *Cf. Haines v. Kerner*, 404 U.S.

519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However,

the Court will not act as a pro se litigant's advocate.  *See Hall*, 935 F.2d at 1110.  For

the reasons discussed below, the Court denies the Motion for Leave to Amend, the §

2255 Motion, and the Motion to Dismiss the Indictment.

## I.  PROCEDURAL HISTORY

On November 21, 2016, Mr. Hennis pled guilty to counts two and three of the indictment, production of child pornography, in violation of 18 U.S.C. § 2251(a), and transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1).  Docket No. 71 at 5-7.  On April 19, 2017, the Court sentenced defendant to 324 months imprisonment to be followed by ten years of supervised release.  Docket No. 120 at 2. Judgment entered on April 24, 2017.  Docket No. 123.

In his plea agreement, Mr. Hennis waived his right to appeal unless (1) his sentence exceeded the maximum combined penalty provided in the statutes of conviction; (2) his sentence exceeded the advisory guideline range that applies to a total offense level of 41; or (3) the government appealed the sentence imposed.  Docket No. 71 at 2.  Mr. Hennis also waived the right to collaterally attack his sentence unless (1) he should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) he was deprived of the effective assistance of counsel; or (3) he was prejudiced by prosecutorial misconduct.  *Id.* at 2-3.

On May 4, 2017, Mr. Hennis appealed his judgment and sentence.  *See* Docket No. 126.  On December 18, 2017, the Tenth Circuit dismissed defendant's appeal because he acknowledged, through counsel, that his appeal was barred by the waiver in his plea agreement.  Docket No. 172.

On January 8, 2018, Mr. Hennis filed a pro se motion to vacate his conviction and/or sentence pursuant to 28 U.S.C. § 2255.  Docket No. 174.  He brought six claims due to ineffective assistance of counsel.  *See id.* at 4-9.  The Court ordered the government to respond on or before February 12, 2018.  Docket No. 177.  The

government responded to the merits of defendant's arguments, but also argued that his motion was premature because his conviction would not become final until March 19, 2018, when the deadline to file a petition for certiorari passed.[1]  Docket No. 184 at 3-4.

On May 7, 2018, Mr. Hennis filed a pro se motion to stay his case for thirty to sixty days to allow him to amend his § 2255 motion.  Docket No. 186 at 1-2.  The government did not respond to this motion.  On May 29, 2018, Mr. Hennis filed a pro se motion to dismiss the indictment pursuant to Fed. R. Civ. P. 12(b) for lack of subject matter jurisdiction and violation of defendant's constitutional rights.  Docket No. 187. The Court ordered the government to respond, Docket No. 188, and the government responded on June 28, 2018.  Docket No. 189.  On October 24, 2018, Mr. Hennis filed a pro se motion for default judgment based on his belief that the government had failed to respond to his motion to dismiss the indictment.  Docket No. 190.

On October 12, 2020, counsel entered on behalf of Mr. Hennis.  Docket No. 201. The following day, defendant filed a motion for an extension of time to file a renewed motion for leave to amend his pending § 2255 motion, Docket No. 202, which the Court granted.  Docket No. 203.  Defendant then filed two more motions for extensions of time, Docket Nos. 204, 206, which the Court granted.  Docket No. 205, 207.  However, on March 1, 2021, defendant filed a status report informing the Court that he would not be filing a renewed motion to amend his § 2255 motion and would instead be resting on his pro se motion to amend.  Docket No. 208 at 6.  Defendant also attached his proposed amended § 2255 motion and a memorandum in support of the motion.  *See* Docket Nos. 208-1, 208-2.  In light of defendant's decision not to file a renewed motion

---

[1] The government also filed a motion for leave to file excess pages in its response to defendant's habeas motion.  Docket No. 183.  The Court will grant this motion.

to amend, the Court ordered the government to respond to defendant's May 7, 2018

motion for leave to amend, Docket No. 209, which the government did.  Docket No. 210.

On April 12, 2021, defendant filed a reply in support of his motion for leave to amend.

Docket No. 211.

## II.  ANALYSIS

### A.  Motion for Leave to Amend

Mr. Hennis filed a pro se motion for leave to amend pursuant to Fed. R. Civ. P.

15(d).[2]  Docket No. 186 at 1.  Mr. Hennis explained that he filed his original § 2255

motion in a "panicked hurry" based on mistaken advice from another inmate about the

timeliness requirements for a § 2255 motion.  *Id.* at 2.  At the time he filed his § 2255

motion, defendant had limited law library and telephone access.  *Id.*  Therefore, Mr.

Hennis asked the Court to stay his case for "30 to 60 days to allow the movant to

amend his 2255 motion and properly address the issues of the case as the government

pointed out, movant filed the 2255 prematurely . . . ."  *Id.* at 2-3.  Defendant states that

he wishes to address (1) "the voluntariness or coercion of his plea agreement"; (2) the

fact that he was not on medication for his bi-polar disorder and PTSD[3]; and (3) that he

"was not consciously aware of the implications of the charges and the actual sentence

he was being told to plea[d]" to by his attorney.  *Id.* at 3.  Defendant additionally states

that, had he been "consciously aware that he was agreeing to a 27 year sentence,

movant would have opted for a jury trial, movant is adamant that he is not a producer

---

[2] While defendant states that this motion is filed pursuant to Fed. R. Civ. P. 15(d), it
seeks leave to amend his § 2255 motion.  The Court accordingly construes it to be filed
pursuant to Fed. R. Civ. P. 15(a).
[3] The Court construes this to be a reference to post-traumatic stress disorder.

nor a distributor of anything, and expressed to his counsel that he did not want to plea [sic] to something he did not do, thus movant was under duress."  *Id.*

"Pursuant to the provisions of Fed. R. Civ. P. 15(a)(2), a movant may file an amended § 2255 motion at any time during post-conviction proceedings with leave of court."  *United States v. Roe*, 913 F.3d 1285, 1296 (10th Cir. 2019).  A court should grant leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court "may withhold leave to amend only for reasons such as 'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment.'"  *United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The government argues that the motion to amend should be denied because it was mooted by the subsequently filed motion to dismiss; it did not sufficiently identify the proposed amendments; and defendant should not be permitted to assert a new, untimely claim.  Docket No. 210 at 4-8.  The Court will deny the motion to amend due to the futility of the amendments.

### 1.  Subsequent Motion to Dismiss

Mr. Hennis's motion for leave to amend was docketed on May 7, 2018, Docket No. 186, and his motion to dismiss the indictment was docketed on May 29, 2018. Docket No. 187.  The government argues that the motion to dismiss was defendant's proposed amended § 2255 motion.  Docket No. 210 at 4.  Therefore, according to the government, when the Court ordered the government to respond to the motion to dismiss, it mooted the pending motion to amend.  *Id.*

In *Castro v. United States*, 540 U.S. 375, 382 (2003), the Supreme Court held that, when a court recharacterizes a pro se litigant's motion as a first § 2255 motion,

> the district court must notify the pro se litigant that it intends to recharacterize the pleading, warn the litigant that this recharacterization means that any subsequent § 2255 motion will be subject to the restrictions on "second or successive" motions, and provide the litigant an opportunity to withdraw the motion or to amend it so that it contains all the § 2255 claims he believes he has.

*Id.* at 383.  "That holding effectively blessed what had 'been the law in our circuit for several years.'"  *United States v. Palermo*, 120 F. App'x 275, 277 (10th Cir. 2005) (unpublished) (quoting *United States v. Martin*, 357 F.3d 1198, 1199-1200 (10th Cir. 2004)).  This rule only applies "in cases where the recharacterized petition would have been the petitioner's *first* § 2255 petition."  *United States v. Torres*, 282 F.3d 1241, 1246 (10th Cir. 2002).  However, the appropriate remedy for a district court's failure to provide notice to the defendant is that the "recharacterized motion will not count as a § 2255 motion for purposes of applying § 2255's 'second or successive' provision."  *Castro*, 540 U.S. at 377; *see also United States v. Spry*, 260 F. App'x 52, 54-55 (10th Cir. 2008) (unpublished) (stating that remedy for district court's failure to provide notice to petitioner of recharacterization was not reversal, but rather that the motion would not count towards § 2255's second or successive provision).

In this case, Mr. Hennis has filed a § 2255 motion and seeks leave to amend it. *See* Docket Nos. 174, 186.  However, "sua sponte treating his motion [to dismiss] as one under § 2255" would "essentially use[] up [Hennis's] one shot at attacking his conviction[ ] and sentence."  *Palermo*, 120 F. App'x at 277.  Accordingly, the Court will not recharacterize defendant's motion to dismiss as a § 2255 motion.  This decision is

especially appropriate in light of defendant's insistence that the motion to dismiss was not his proposed amended § 2255 motion.  *See* Docket No. 208 at 1-2.

### 2.  Failure to Identify the Proposed Amendments

The government argues that the motion to amend should be denied because it fails to identify the proposed amendments and does not comply with D.C.COLO.LCivR 15.1(b).  Docket No. 210 at 5-7.  Defendant argues that, because his motion to amend was filed within the time period to file an amended § 2255 motion, "particularity was not needed."  Docket No. 211 at 6.

The government cites cases denying leave to amend without prejudice due to failure to describe the proposed amendment.  *See* Docket No. 210 at 5 (citing *Wilder v. Daniels*, No. 13-cv-01701-PAB-BNB, 2015 WL 424571, at *1 (D. Colo. Jan. 29, 2015); *Vue v. Harmon*, No. 08-cv-00148-PAB-MJW, 2009 WL 4908439, at *2 (D. Colo. June 11, 2009); *Edmond v. Raemisch*, 593 F. App'x 761, 766 (10th Cir. 2014) (unpublished)).  However, the Court finds each of these cases distinguishable.

In *Wilder*, the court denied a motion to amend without prejudice and instructed the plaintiff to use the appropriate form for any future attempt to seek leave to amend.  2015 WL 424571, at *1.  In contrast, a denial of leave to amend in this case would foreclose any claim that did not relate back to Mr. Hennis's original § 2255 motion.  In *Vue*, the magistrate judge recommended denying leave to amend the complaint because, *inter alia*, the plaintiff had been given ample time to cure deficiencies and the plaintiff merely sought to amend to "restate a claim for relief" or to "otherwise make a proper" § 1983 claim.  2009 WL 4908439, at *2.  In this case, Mr. Hennis describes the general nature of the amendments he wishes to make and has not had an opportunity

to cure deficiencies.  In *Edmond*, the Tenth Circuit upheld the district court's denial of the plaintiff's post-judgment motion to amend because it was insufficiently particular and "the district court had a well-founded concern about avoiding a rolling complaint that continually changes as orders are issued."  593 F. App'x at 766 (internal quotation marks omitted).  Additionally, the plaintiff there could have filed a new action instead of attempting to amend his complaint post-judgment.  *Id.*  There is no concern of a "rolling" § 2255 motion in this case and, like in *Wilder*, the consequences of the denial of the motion to amend in this case are significantly higher than those in *Edmond*.

The government argues that Mr. Hennis's motion to amend fails to provide sufficient particularity because he did not attach a copy of the proposed amended petition to his motion to amend.  Docket No. 210 at 5-6.  Local Rule 15.1(b) states that "[a] party who files an opposed motion for leave to amend or supplement a pleading shall attach as an exhibit a copy of the proposed amended or supplemental pleading which strikes through (e.g., ~~strikes through~~) the text to be deleted and underlines (e.g., underlines) the text to be added."  The government acknowledges that it is "unclear" if this rule applies to unrepresented prisoners, and the government and defendant cite contradictory statements by courts within this district.  *Compare* Docket No. 210 at 6, *with* Docket No. 211 at 5.  While pro se litigants must follow the same procedural rules as other litigants, *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994), "the Tenth Circuit has repeatedly afforded leniency to pro se litigants who inadvertently violate procedural or substantive norms."  *Chung v. El Paso Sch. Dist. #11*, No. 14-cv-01520-KLM, 2015 WL 191851, *2 (D. Colo. Jan. 13, 2015).  Due to the lack of clarity and defendant's pro se status, the Court will exercise its discretion to find that Mr. Hennis's

failure to attach a copy of the proposed amended petition is not fatal to his motion to amend.

### 3. Futility of the Amendments

Under Rule 15, a district court can deny a motion to amend a habeas complaint due to the "futility of the amendment." *Stafford v. Saffle*, 34 F.3d 1557, 1560 (10th Cir. 1994) (quoting *Foman*, 371 U.S. at 182); *see also Pacheco v. El Habti*, 48 F.4th 1179, 1185 (10th Cir. 2022). Mr. Hennis's motion for leave to amend states that he wishes to address (1) "the voluntariness or coercion of his plea agreement"; (2) the fact that he was not "on medication for his diagnosed bi-polar disorder and PTSD"; and (3) that he "was not consciously aware of the implications of the charges and the actual sentence he was being told to plea[d]" to by his attorney. Docket No. 186 at 3. For the following reasons, the Court holds that the amendments would be futile and therefore denies leave to amend the § 2255 motion.

### a) Claims One and Two

Mr. Hennis seeks to amend his § 2255 motion to "address the voluntariness or coercion of his plea agreement." Docket No. 186 at 3. Mr. Hennis also challenges the voluntariness of his guilty plea because he was not on "medication for his diagnosed bi-polar disorder and PTSD." *Id.* at 3. Both claims are subject to denial based on the collateral-attack waiver in Mr. Hennis's plea agreement. The plea agreement states

> The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

9

Docket No. 71 at 2-3.  A collateral-attack waiver in a plea agreement will be enforced if: (1) the collateral attack falls within the scope of the waiver; (2) the defendant's waiver of his collateral rights was knowing and voluntary; and (3) enforcement of the waiver would not result in a miscarriage of justice.  *United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir. 2012).

The Court finds that each of the *Viera* factors are satisfied, and consequently, the collateral attack waiver bars any argument about the voluntariness or coercion of his plea agreement or his mental state.  First, Mr. Hennis's arguments fall within the scope of the waiver, whereby Mr. Hennis explicitly waived his right to file a collateral attack, including a § 2255 motion.  *See* Docket No. 71 at 2-3 (stating that "defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack [including] . . . a motion brought under 28 U.S.C. § 2255.").  The voluntariness of Mr. Hennis's plea agreement or his mental state do not implicate the three narrow exceptions in the waiver: sentencing guidelines, assistance of counsel, or prosecutorial misconduct.  *See id*.

Second, Mr. Hennis's appellate waiver was knowing and voluntary.  At the change of plea hearing, Mr. Hennis stated under oath that he was not under the influence of any drugs, prescription medication, or alcohol and that nothing would interfere with his ability to understand the hearing.  Docket No. 167 at 3-4.  Mr. Hennis affirmed that he read his plea agreement, met with his attorney to review the agreement prior to the hearing, had the opportunity to ask his attorney questions, and was satisfied with his attorney's answers to his questions.  *Id*. at 4-6.  Mr. Hennis then affirmed that he voluntarily signed the plea agreement.  *Id*. at 6.  The Court subsequently read the

appellate waiver language to Mr. Hennis, and Mr. Hennis stated that he carefully reviewed and understood the waiver of his appellate rights and the three exceptions. *Id.* at 8-9. The Court then discussed Mr. Hennis's trial rights. *Id.* at 16-19. Mr. Hennis stated that he understood those rights, but he decided that it was in his best interest to plead guilty rather than proceed to trial. *Id.*

Finally, enforcement of the waiver would not result in a miscarriage of justice. A miscarriage of justice occurs "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." *United States v. Hahn*, 359 F.3d 1315, 1327 (10th Cir. 2004). Here, the Court did not rely on an impermissible factor, Mr. Hennis does not claim ineffective assistance of counsel in regard to his appellate waiver, the sentence did not exceed the statutory maximum, and there is no evidence the waiver was unlawful. *See* Docket No. 167 at 11. Consequently, the appellate waiver is valid and precludes Mr. Hennis's arguments about the voluntariness of his plea agreement or his mental state with respect to medications.

Ineffective assistance of counsel claims, however, are an explicit exception to Mr. Hennis's collateral attack waiver. Docket. No. 71 at 2-3 (stating that "[t]his waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds . . . (2) the defendant was deprived of the effective assistance of counsel"). Liberally construing Mr. Hennis's claims about the voluntariness of his plea agreement or his mental state as raising ineffective assistance

of counsel arguments, the Court finds that these arguments are contradicted by his sworn testimony at the change of plea hearing.  "[S]tatements on the record, 'as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.'"  *Romero v. Tansy*, 46 F.3d 1024, 1033 (10th Cir. 1995) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).  Thus, a defendant's "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  *Blackledge*, 431 U.S. at 74.

 At the change of plea hearing, the Court asked Mr. Hennis if he had ever been diagnosed with a mental illness or emotional disability and Mr. Hennis only replied, "[d]epression; never diagnosed."  Docket No. 167 at 3.  The Court asked Mr. Hennis if he had ever taken any type of prescription medication for depression, and Mr. Hennis replied, "[n]o."  *Id*. at 4.  Mr. Hennis indicated that he felt depressed at the hearing, but believed his mental state would not interfere with his ability to understand the court proceedings.  *Id*.  Furthermore, Mr. Hennis stated under oath that he voluntarily signed his plea agreement and that no one forced or threatened him to plead guilty to counts two and three of the indictment.  *Id*. at 6, 18.  Mr. Hennis indicated that no one, including his attorney, made any other promises to him that were not included in the plea agreement.  *Id.*  Mr. Hennis additionally confirmed that he had no complaints about his attorney or the negotiated plea agreement.  *Id*. at 19.  Mr. Hennis stated he was satisfied with his attorney's representation.  *Id*.

The Court found that "Mr. Hennis is alert, sober and competent . . . Mr. Hennis has voluntarily, knowingly and intelligently entered pleas of guilty to Counts 2 and 3 of

the Indictment . . . [and] that Mr. Hennis' pleas of guilty are not the result of any mistake, misunderstanding, fear, coercion or undue influence." *Id*. at 21.  Mr. Hennis's assertions under oath and the Court's findings carry a "strong presumption of verity" and should be credited over the post-hoc allegations in his motion.  *See Blackledge*, 431 U.S. at 74.  As a result, the Court finds no basis to grant the defendant's motion to amend based on the voluntariness of his guilty plea or his mental state.

### b) Claim Three

Mr. Hennis's third argument is that he "was not consciously aware of the implications of the charges and the actual sentence he was being told to plea[d]" to by his attorney.  Docket No. 186 at 3.  Mr. Hennis states that, had he been "consciously aware that he was agreeing to a 27 year sentence, movant would have opted for a jury trial, movant is adamant that he is not a producer nor a distributor of anything, and expressed to his counsel that he did not want to plea [sic] to something he did not do, thus movant was under duress." *Id*.  The Court liberally construes this claim as an ineffective assistance of counsel argument, which is an explicit exception to his appellate waiver.  *See* Docket No. 71 at 2-3.

Mr. Hennis's sworn testimony at the change of plea hearing renders this claim futile.  Under oath, Mr. Hennis stated that he read his plea agreement, met with his attorney to review the agreement, had the opportunity to ask his attorney questions, and voluntarily signed the plea agreement.  Docket No. 167 at 4-6.  Mr. Hennis informed the Court he was not under the influence of any drugs, prescription medication, or alcohol at the hearing, *id*. at 3, and that he understood the nature of the hearing.  *Id*. at 4.  Mr. Hennis now asserts he "was not consciously aware of the implications of the charges"

or that he was agreeing to a 27-year sentence.  Docket No. 186 at 3.  However, at the

hearing, the Court reviewed all the material elements of the plea agreement and

explained the charges to Mr. Hennis.  Docket No. 167 at 9-10.  Mr. Hennis indicated

that he understood the elements of the two charges: production of child pornography

and transportation of child pornography, *id*. at 10-11, and that he did not disagree with

any of the stipulated facts in the plea agreement.  *Id*. at 12.  The Court informed Mr.

Hennis of the maximum statutory penalties for the charges, *id*. at 11, and the advisory

guideline sentencing range of 324 to 405 months imprisonment for his offense level.  *Id*.

at 14.  Mr. Hennis confirmed he understood both the maximum statutory penalties and

the advisory guideline sentencing range.  *Id*. at 11, 15.  The Court also discussed the

implications of pleading guilty, including his agreement to pay restitution, *id*. at 7; his

obligation to register as a sex offender, *id*. at 12; the loss of his trial rights, *id*. at 16-18;

and the loss of other rights such as the right to vote, hold elective office, sit on a jury,

and possess firearms.  *Id*. at 16.  The Court subsequently found that Mr. Hennis

understood the charges, each term in his plea agreement, and the maximum sentence

to imprisonment.  *Id*. at 21-22.

Mr. Hennis states that he "is adamant that he is not a producer nor a distributor

of anything" and that he "expressed to his counsel that he did not want to plea [sic] to

something he did not do, thus movant was under duress."  Docket No. 186 at 3.

However, Mr. Hennis confirmed at the hearing that he had no complaints about his

attorney or the plea agreement, he was satisfied with the attorney's representation, he

was not forced or threatened to plead guilty, and that he believed it was in his best

interest to plead guilty rather than go to trial.  Docket No. 167 at 18-19.  The Court

subsequently found that "Mr. Hennis has voluntarily, knowingly and intelligently entered pleas of guilty to Counts 2 and 3 of the Indictment . . . [and] that Mr. Hennis' pleas of guilty are not the result of any mistake, misunderstanding, fear, coercion or undue influence."  *Id*. at 21.  Mr. Hennis's conclusory allegations about not understanding the implications of his sentence and being under duress are "wholly incredible" based on the language of the signed plea agreement and the extensive colloquy at the change of plea hearing.  *See Blackledge*, 431 U.S. at 74.  As a result, the Court finds it futile to grant Mr. Hennis's third claim in the motion to amend.

For the foregoing reasons, the motion to amend is denied.

### *4.  Proposed Amended § 2255 Motion Filed by Counsel*

Mr. Hennis filed a proposed amended § 2255 motion with his March 1, 2021 status report.  *See* Docket Nos. 208, 208-1.  Mr. Hennis also filed a memorandum in support of the proposed amended § 2255 motion.  Docket No. 208-2.  The proposed amended § 2255 motion seeks to bring one claim that counsel was ineffective for failing to seek suppression of the evidence.  Docket No. 208-1 at 4.  The memorandum in support argues that the search warrant used to gather evidence against defendant was "tainted by numerous violations of the Fourth Amendment," the Court would have granted a motion to suppress the evidence if one had been filed, and if the evidence had been suppressed defendant would have gone to trial instead of pleading guilty. *See generally* Docket No. 208-2.

However, this proposed ineffective assistance of counsel claim bears no resemblance to those which defendant sought leave to add in his motion to amend.  Mr. Hennis argues that, had the Court resolved his motion to amend before March 19, 2019,

15

"Hennis could have presented any claim of his choosing without worry about the statute of limitations."  Docket No. 211 at 6.  This fails to acknowledge that defendant filed a § 2255 motion and therefore any amendment of it is subject to Fed. R. Civ. P. 15.  The defendant fails to argue how the suppression claim can be considered within the ambit of the claims he sought leave to add in his motion to amend.[4]  *See generally* Docket Nos. 208, 211.  Accordingly, the Court will strike Docket No. 208-1.[5]

### B.  Motion to Dismiss Indictment

On May 29, 2018, Mr. Hennis filed a motion to dismiss the indictment pursuant to Fed. R. Civ. P. 12(b) for lack of subject matter jurisdiction and violation of his constitutional rights.  Docket No. 187.  The government responded on June 28, 2018, Docket No. 189, and defendant replied on April 11, 2019.[6]  Docket No. 191.

Mr. Hennis argues that the indictment in his case was fatally flawed, but that he did not notice this error until May 2018 when he received a copy of the indictment. Docket No. 187 at 1.  Mr. Hennis argues that count two of the indictment required him to

---

[4] To the extent the portion of the status report that says that defendant's motion to amend sought leave to "properly and thoroughly address the issues of th[e] case," Docket No. 208 at 6, can be construed as an argument that this gave defendant *carte blanche* to bring any claim he wished after filing the motion to amend, the Court rejects the argument.

[5] The Court does not apply the directives of Fed. R. Civ. P. 15(c) regarding when an amendment relates back to the original petition.  Instead, the Court finds that defendant's proposed § 2255 petition is not encompassed within the grounds on which he sought leave to amend his original petition, and accordingly, the Court will not accept it for filing.

[6] On October 24, 2018, Mr. Hennis filed a motion for default judgment due to the alleged failure of the government to respond to his motion to dismiss the indictment.  Docket No. 190.  In his April 11, 2019 reply, Mr. Hennis states that the government's response was mailed to the wrong address and asks the Court to accept his late reply.  Docket No. 191 at 1.  Because Mr. Hennis's motion for default judgment is premised on the government's failure to respond, but the government did in fact respond, *see* Docket No. 189, the Court will deny the motion.

have "employed, **and** used, **and** persuaded, **and** induced **and** enticed **and** coerced

victim 'minor '1' to engage in sexually explicit conduct **and** to have known or had

reason to know that the visual depiction of such conduct would be transported in

interstate **and** foreign commerce." *Id.* at 8 (emphasis in original).  Mr. Hennis argues

that he did not, nor was he alleged to have, employed, used, persuaded, induced,

enticed, and coerced the victim to do anything, and that he had no reason to believe

that the alleged visual depictions would be moved in interstate and foreign commerce

because both defendants lived in Colorado. *Id.*  Mr. Hennis makes a similar argument

regarding count three, the transport of child pornography. *Id.* at 10.  He argues that the

use of the word "and" instead of "or" makes the indictment ambiguous as to what the

government must prove beyond a reasonable doubt. *Id.*  Mr. Hennis argues that he was

denied the opportunity to adequately consider whether to plead guilty or go to trial

because he did not receive a copy of his indictment until after his conviction. *Id.* at 13.

In his reply, Mr. Hennis argues that it was necessary for a copy of the indictment to be

given to him personally, not just to his attorney.   Docket No. 191 at 5.  In response, the

government argues that the motion to dismiss is untimely under Fed. R. Crim. P.

12(c)(3) or, if construed as a § 2255 motion, fails due to defendant's guilty plea, his plea

agreement waiver, and procedural default.  Docket No. 189 at 1.

  The Court determines that it lacks jurisdiction to consider Mr. Hennis's motion to

dismiss and therefore his motion will be denied.  "Federal courts are courts of limited

jurisdiction.  They possess only that power authorized by Constitution and statute."

*United States v. James*, 728 F. App'x 818, 822 (10th Cir. 2018) (unpublished) (quoting

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  "After entry of

final judgment, a district court has jurisdiction only to the extent permitted by statute or rule." *Id*. The federal criminal offense jurisdiction statute, 18 U.S.C. § 3231, "by itself doesn't give the district court jurisdiction over all post-conviction motions." *Id*. (citations omitted). Mr. Hennis was sentenced on April 19, 2017, Docket No. 120, and judgment entered on April 24, 2017. Docket No. 123. Mr. Hennis's motion to dismiss, docketed on May 29, 2018,[7] was filed over a year after final judgment was entered in the case. *See* Docket No. 187. Mr. Hennis does not provide any statutory basis for the Court's jurisdiction to consider his motion to dismiss, *see generally id*., and the Court does not find an independent statutory basis conferring jurisdiction. *See United States v. Patterson*, 253 F. App'x 748, 750 (10th Cir. 2007) (unpublished) (holding that the district court lacked jurisdiction to consider defendant's post-appeal motion to dismiss his indictment and that if defendant wanted to collaterally attack the sufficiency of the indictment, he must do so under 28 U.S.C. § 2255); *United States v. Scott*, 2015 WL 12915112, at *1-2 (D. Wyo. Aug. 24, 2015) (holding that the court lacked jurisdiction to consider defendant's motion to dismiss the indictment because defendant's conviction and sentence were final); *United States v. Townsend*, 809 F. App'x 593, 595 n.1 (11th Cir. 2020) (unpublished) (holding that the district court lacked jurisdiction to consider an argument that indictment was defective because a § 2255 motion was the "exclusive mechanism" for asserting this claim, and the district court lacked jurisdiction to consider a second § 2255 motion).

The Court declines to construe the motion to dismiss as a § 2255 motion because Mr. Hennis has already filed a motion under § 2255, and he cannot file a

---

[7] The motion is dated May 23, 2018. *See* Docket No. 187 at 14. The difference in dates between when the motion was signed and docketed is immaterial.

second or successive § 2255 motion without approval by the Court of Appeals.  *See* 28

U.S.C. § 2255(h).  As a result, the Court lacks jurisdiction to consider Mr. Hennis's

motion to dismiss the indictment and therefore the Court will deny it.[8]

### C.  Defendant's § 2255 Motion

Mr. Hennis asserts six claims for ineffective assistance of counsel in his

§ 2255 motion.  Docket No. 174 at 4-9.  Mr. Hennis argues that counsel was ineffective

for failing to: (1) investigate or pursue the affirmative defense of diminished capacity; (2)

request a full mental health evaluation; (3) object to cross-examination questions of the

defense's expert witness at the sentencing hearing; (4) review discovery evidence; (5)

object to the denial of standard tests normally conducted in psychosexual therapy; and

(6) offer character mitigation evidence.  All six claims of ineffective assistance of

counsel are excepted from the appeal waiver.  *See* Docket No. 71 at 2-3.

To establish ineffective assistance of counsel, Mr. Hennis must demonstrate both

that counsel's performance fell below an objective standard of reasonableness and that

counsel's deficient performance resulted in prejudice to his defense.  *Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984).  "Judicial scrutiny of counsel's performance

must be highly deferential."  *Id.* at 689.  There is "a strong presumption" that counsel's

performance falls within the "wide range of reasonable professional assistance."  *Id.*

---

[8] Even if the Court had jurisdiction to consider the motion, the motion would be untimely.
*See* Fed. R. Crim. P. 12(b)(3) (stating that a defect in the indictment must be raised by
pretrial motion "if the basis for the motion is then reasonably available and the motion
can be determined without a trial on the merits"); Fed. R. Crim. P. 12(b)(2) (stating that
a "motion that the court lacks jurisdiction may be made at any time while the case is
pending.").  The motion would be untimely because Mr. Hennis filed his motion to
dismiss after the case was reduced to judgment, the appeal was dismissed, and the
time to file a petition for certiorari review had elapsed.  *See* Docket No. 120; Docket No.
123; Docket No. 172; Docket No. 187.

Mr. Hennis bears the burden of overcoming this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id.*  "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong."  *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

Under the prejudice prong, Mr. Hennis must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *See Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  To demonstrate prejudice in relation to his conviction, Mr. Hennis must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). This inquiry turns on: (1) whether going to trial would have been objectively rational under the circumstances; and (2) whether, in light of all the factual circumstances surrounding the plea, there is in fact a reasonable probability that Mr. Hennis would have rejected the proposed plea agreement and instead proceeded to trial.  *Heard v. Addison*, 728 F.3d 1170, 1184 (10th Cir. 2013).  To demonstrate prejudice in the sentencing context, Mr. Hennis must show a reasonable probability that his counsel's allegedly deficient performance resulted in an increased sentence.  *See Glover v. United States*, 531 U.S. 198, 203-04 (2001).  A court is not required to address both prongs of the *Strickland* test if the defendant fails to make a sufficient showing of one.  *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998).

### 1. Claim One

In claim one, defendant argues that his counsel was ineffective in not investigating or pursuing the affirmative defense of diminished capacity based on Mr. Hennis's consumption of marijuana and alcohol, lack of sleep, and work stress. Docket No. 174 at 4-5. Mr. Hennis has not demonstrated that counsel's performance fell below an objective standard of reasonableness. Diminished capacity is only a defense to specific intent crimes. *United States v. Jackson*, 248 F.3d 1028, 1029-30 (10th Cir. 2001); *United States v. Ballieu*, 480 F. App'x 494, 497 (10th Cir. 2012) (unpublished). Diminished capacity is not a defense to *transportation* of child pornography because that is a general intent crime. *See Ballieu*, 480 F. App'x at 497 ("observing that Congress's use of the term 'knowingly' indicates a general intent offense"). There is no clear consensus on whether *production* of child pornography is a general or specific intent crime. *Compare United States v. Palomino-Coronado*, 805 F.3d 127, 130 (4th Cir. 2015) (indicating that production of child pornography under § 2251(a) is a specific intent crime), *with Klopfenstine v. United States*, 2014 WL 4055791, at *4 (W.D. Mo. Aug. 14, 2014) (holding that production of child pornography under § 2251(a) is a general intent crime). Even if diminished capacity was a legally viable defense, Mr. Hennis has not alleged sufficient facts that would support a voluntary intoxication defense. Mr. Hennis claims that his use of marijuana and alcohol was often "daily based." Docket No. 174 at 5. However, to establish a voluntary intoxication defense, "a defendant must point to evidence of mental impairment, impairment to the point that he could not form the *mens rea* necessary to commit the crime in question." *United States v. Dyke*, 718 F.3d 1282, 1293 (10th Cir. 2013). Mr. Hennis does not allege any facts

suggesting that his intoxication rose to that level of mental impairment throughout the course of his conduct, nor that he communicated those facts to counsel.  Furthermore, Mr. Hennis's claim that his consumption of marijuana and alcohol was "daily based" is contradicted by his statements in the presentence investigation report.  Mr. Hennis reported that he would imbibe roughly four to six beers a couple times per month and would smoke marijuana two to three times per week.  Docket No. 103 at 24.  It was therefore not "completely unreasonable" for counsel to not pursue a diminished capacity defense.  *See Boyd*, 179 F.3d at 914.

Even if counsel's performance was objectively unreasonable, Mr. Hennis has not demonstrated any prejudice.  It is unclear whether defendant asserts claim one to challenge his conviction or sentence.  To the extent Mr. Hennis raises this claim in relation to his conviction, he makes no argument that there was a reasonable probability that he would have insisted on going to trial if his counsel investigated or pursued this affirmative defense.  *See Hill*, 474 U.S. at 59.  As the government notes, Mr. Hennis received a three-level decrease in his offense level for accepting responsibility in the plea agreement, which enabled him to avoid a guideline sentence of life imprisonment. *See* Docket No. 184 at 9; Docket No. 105 at 16.  Going to trial would not have been objectively rational given the government's evidence and the possibility of a life sentence.  To the extent Mr. Hennis argues counsel should have raised diminished capacity at sentencing, Mr. Hennis makes no showing how the failure to investigate this defense increased his sentence.  *See Glover*, 531 U.S. at 203-04.  In fact, as the government notes, this argument is irrelevant in the sentencing context because diminished capacity is not a basis for a downward departure if it is "caused by the

voluntary use of drugs or other intoxicants."  U.S.S.G. § 5K2.13; Docket No. 184 at 9 n.2.  Mr. Hennis therefore fails to meet his burden and the Court rejects claim one.

### 2.  Claim Two

In claim two, Mr. Hennis argues that counsel was ineffective for not requesting a "full mental health evaluation to couple with the sexual psychotherapist[']s evaluation" of defendant.  Docket No. 174 at 5.  Defendant argues that such an evaluation was necessary to provide the Court with a complete picture of his mental health, which would have allowed for more mitigation and a greater likelihood of a downward variance.  *Id.*  Mr. Hennis has not demonstrated that counsel's performance was constitutionally deficient.  Defense counsel retained Dennis Michael Baker, a licensed professional counselor with extensive experience investigating child sexual exploitation, to conduct numerous psychological tests of Mr. Hennis including: SHIPLEY-2 (Intellectual Screening Test), Drug Use Questionnaire, Alcohol Use Questionnaire, Millon Clinical Multiaxial Inventory-III, Static-99, STABLE and Acute, Vermont Assessment of Sex Offender Risk-2, Abel Screen, Internet Screening Test, and Interpersonal Relations Questionnaire.  Docket No. 94-1 at 2; Docket No. 168 at 30-34. Mr. Baker identified a possible diagnosis of bipolar disorder for Mr. Hennis after conducting these assessments.  Docket No. 94-1 at 13.  Mr. Hennis has not explained what an additional full mental health evaluation would reveal or how this information would have supported a downward variance.  *See Cummings v. Sirmons*, 506 F.3d 1211, 1233 (10th Cir. 2007) (failure to identify "precisely what these purported experts would have testified to" is insufficient to establish deficient performance under *Strickland*).

Even assuming some constitutional deficiency, Mr. Hennis has not demonstrated any resulting prejudice.  Mr. Hennis has not shown a reasonable probability that a full mental health evaluation would change his sentence.  *See Glover*, 531 U.S. at 203-04.  Mr. Hennis's advisory guideline range was 324-405 months, and Court imposed the lowest range sentence of 324 months.  Docket No. 169 at 58-59, 70.  The Court denied the defendant's motion for a non-guideline sentence due to the severity of the crime.  *Id*. at 67-68 (discussing how this was a "horrible" crime, committed against "a real victim").  The Court explicitly stated it was not basing the sentencing decision on the defendant's background or his risk of re-offending.  *Id*. at 60, 63.  Mr. Hennis therefore fails to meet his burden and the Court rejects his second claim.

### 3.  Claim Three

In claim three, Mr. Hennis argues that his counsel was ineffective in failing to object at the sentencing hearing to cross-examination questions of defense expert Dennis Michael Baker.  Docket No. 174 at 6.  On cross examination, the government asked Mr. Baker whether he was aware that the reporting witness met Mr. Hennis at a BDSM party, that the reporting witness and Mr. Hennis engaged in consensual sex, and that Mr. Hennis showed the witness a video involving a child being sexually assaulted.  Docket No. 168 at 58-60.  Mr. Hennis argues that the cross-examination questions violated the Confrontation Clause, constituted impermissible hearsay, and lacked foundation.  Docket No. 174 at 6.  Mr. Hennis has not demonstrated that counsel's performance fell below an objective standard of reasonableness.  "Mere failure to object to evidence does not render an attorney ineffective*." Yarrington v. Davies*, 992 F.2d 1077, 1080 (10th Cir. 1993).  Furthermore, the Confrontation Clause is not applicable to

sentencing proceedings. *United States v. Bustamante*, 454 F.3d 1200, 1202-03 (10th Cir. 2006). Hearsay statements can be considered at sentencing if they contain "some minimal indicia of reliability." *United States v. Damato*, 672 F.3d 832, 847 (10th Cir. 2012); *United States v. Ruby*, 706 F.3d 1221, 1229 (10th Cir. 2013). The cross-examination questions of Mr. Baker bear a "minimal indicia of reliability" because Mr. Hennis stipulated in his plea agreement that he had consensual sex with the witness and showed her the aforementioned video. *See* Docket No. 71 at 12. As a result, counsel's failure to object to the cross-examination questions was not objectively unreasonable given that the objections would have been overruled.

Furthermore, Mr. Hennis has not demonstrated that his counsel's allegedly deficient performance resulted in an increased sentence. Mr. Hennis claims the cross-examination questions were used to "dilute the Expert[']s opinion as incomplete." Docket No. 174 at 6. However, the Court did not take Mr. Baker's responses to these cross-examination questions into account when assessing the reliability of his expert opinion. *See* Docket No. 169 at 60-63. The Court found that Mr. Baker was a credible witness, but declined to give the risk assessment "too much weight" because Mr. Baker was unable to conduct a polygraph or plethysmograph test in federal prison, which Mr. Baker stated were more reliable assessments for determining pedophilia. *Id*. at 60-61, 63. Even if the Court afforded more weight to the expert's opinion, it would not have changed Mr. Hennis's ultimate sentence. As stated previously, Mr. Hennis's advisory guideline range was 324-405 months, and Court imposed the bottom of the guideline sentence of 324 months. *Id*. at 58-59, 70. The Court finds that Mr. Hennis has shown

neither deficiency nor prejudice from counsel's failure to object at the sentencing hearing, and thus rejects claim three.

### 4. Claim Four

In claim four, Mr. Hennis argues that counsel was ineffective because he failed to review all the discovery materials.  Docket No. 174 at 6.  At the sentencing hearing, counsel stated he "never saw" Mr. Hennis's emails related to Craigslist solicitations, Docket No. 169 at 8, which the government described as containing "dozens of instances in which the defendant solicited others on Craigslist to create an incest family."  *Id*. at 35.  The government clarified that these emails were made available for counsel's review at the Colorado Springs Police Department, instead of through traditional discovery, because the emails contained contraband.  *Id*. at 9.

Regardless of whether counsel's performance was objectively unreasonable, Mr. Hennis has not met his burden of demonstrating prejudice.  Mr. Hennis asserts that defense counsel's admission that he failed to review this discovery evidence "does Petitioner an extreme disservice, not only in its potential for mitigation, but Counsel could in no way ascertain whether or not there existed evidence which could affect his conviction, provide a defense, or defeat the imposition of enhancements."  Docket No. 174 at 6.   With respect to the conviction, Mr. Hennis has failed to allege that there is a reasonable probability that he would have gone to trial if defense counsel had reviewed the Craigslist evidence.  *See Hill*, 474 U.S. at 59.  Going to trial would not have been objectively rational under the circumstances given that the emails contained "dozens of instances in which the defendant solicited others on Craigslist to create an incest family."  *See* Docket No. 169 at 35.

With respect to his sentence, Mr. Hennis has also failed to show a reasonable probability that counsel's failure to review the emails resulted in an increased sentence. As stated previously, the Court imposed a bottom of the guideline sentence of 324 months. *Id.* at 58-59, 70. The emails were not admitted into evidence or referred to in the stipulated facts of the plea agreement. *See generally* Docket No. 71. Moreover, the Court denied the downward variance due to the severity of the crime and never referenced the Craigslist emails in its sentencing rationale. *See* Docket No. 169 at 58-70. Mr. Hennis argues that these emails had "potential for mitigation" or could have "defeat[ed] the imposition of enhancements," but he does not explain how emails about creating an incest family could be used for these purposes. *See* Docket No. 174 at 6. Mr. Hennis also asserts that the Craigslist evidence was used to "diminish the testimony" of Mr. Baker. *Id.* However, this argument is contradicted by the record. The Court did not discount the weight of Mr. Baker's risk assessment due to the Craigslist emails, but rather declined to give the risk assessment "too much weight" because Mr. Baker was unable to conduct the polygraph or plethysmograph test. *See* Docket No. 169 at 60-63. As a result, the Court finds that Mr. Hennis has failed to meet his burden of demonstrating prejudice, and the Court rejects claim four.[9]

### 5. Claim Five

In claim five, Mr. Hennis argues that counsel was "ineffective in failing to object to the denial of standard tests normally conducted" by the expert witness. Docket No. 174

---

[9] To the extent Mr. Hennis claims that counsel failed to review other discovery materials, this claim fails as conclusory because Mr. Hennis has not described any other specific discovery materials. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (Although the Court must construe defendant's pro se motion liberally, the Court is not required to "fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments.").

at 7.  Mr. Hennis apparently relates to Mr. Baker's testimony that he would have preferred to conduct two other assessments – the sexual history polygraph test and the penile plethysmograph test – to determine whether Mr. Hennis is a pedophile and the risk of recidivism, but Mr. Baker was unable to perform these two tests while Mr. Hennis was incarcerated due to the federal prison's rules.  *See* Docket No. 168 at 76-79.  Mr. Hennis argues that his counsel's failure to object to this prison policy allowed the government to "diminish the testimony of the [e]xpert as incomplete" and enabled the government to "improperly gain an advantage in defeating psychosexual risk assessment analysis for purposes of sentence mitigation."  Docket No. 174 at 7-8.  Mr. Hennis has not shown that his counsel's performance was constitutionally deficient. First, it is unclear whether counsel could have even validly objected to the denial of the sexual history polygraph test and the plethysmograph test.  Second, insisting on these additional tests could have undermined the defense's sentencing strategy.  Based on multiple assessments, Mr. Baker found no diagnosis of pedophilia and concluded that Mr. Hennis posed a low to moderate risk of recidivism.  Docket No. 168 at 39-40.  It would be a reasonable strategic decision for counsel to proceed with this favorable opinion, instead of demanding additional tests that could have revealed a higher likelihood of recidivism.  *See Strickland*, 466 U.S. at 689 (discussing how "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").  Mr. Hennis has not overcome the presumption that counsel's alleged error was a sound mitigation strategy.

Mr. Hennis also has not demonstrated a reasonable probability that his sentence would have been different if counsel demanded the sexual history polygraph test and

the plethysmograph test.  First, if counsel had objected, there is little likelihood the Court would have ordered the tests because it is extremely difficult to conduct these tests in federal prisons.  *See* Docket No. 168 at 78-79; Docket No. 169 at 53-54, 61.  Next, if the two tests were conducted, the results could have shown a higher likelihood of recidivism, thus undermining Mr. Hennis's argument for a variance.  *See United States v. Fields*, 949 F.3d 1240, 1267 (10th Cir. 2019) (finding no prejudice when counsel declined to present social history evidence that could have supported mitigating factors because the evidence would have undercut the defense's strategy); *Moore v. McKune*, 534 F. App'x. 712, 724 (10th Cir. 2013) (unpublished) (finding no prejudice on failure to conduct blood tests because it was speculative whether the tests would support the defense).  Finally, even if the test results were favorable for Mr. Hennis, the results would not have altered the Court's sentence.  As previously stated, the Court imposed the lowest range sentence of 324 months.  Docket No. 169 at 58-59, 70.  The Court explicitly stated it was "not concluding Mr. Hennis is a pedophile," and the Court would not base the sentencing decision on his risk of re-offending or the "lurid nature of some of the kik chats."  *Id*. at 63-64.  The Court instead relied on the severity of the crime when denying the defendant's motion for a non-guideline sentence.  *Id*. at 67-68 (discussing how this was a "horrible" crime, committed against "a real victim").  Mr. Hennis therefore fails to meet his burden and the Court rejects claim five.

### 6.  *Claim Six*

In claim six, Mr. Hennis argues that his counsel failed to present character evidence to mitigate his sentence.  Docket No. 174 at 8-9.  Specifically, Mr. Hennis states that counsel refused to obtain letters from defendant's family and friends

regarding his character.  *Id.* at 9.  Furthermore, Mr. Hennis alleges that counsel failed to adequately address his character in the closing statement, instead focusing most of the closing statement on a comparison between Mr. Hennis's conduct and more egregious cases.  *Id.*  Mr. Hennis has not shown that his counsel's performance was constitutionally ineffective.  A defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *See Strickland*, 466 U.S. at 690.  Mr. Hennis does not allege any facts indicating which friends and family members his counsel should have contacted to obtained character letters.  *See United States v. Baum*, 461 F. App'x 736, 739 (10th Cir. 2012) (unpublished) (finding no ineffective assistance of counsel where "[movant] did not indicate what witnesses or evidence could have been presented or how his sentence would have been different.").  Furthermore, Mr. Hennis's claim that counsel failed to "display that his crime was an anomaly" is wholly contradicted by the record.  *See* Docket No. 174 at 9.  During closing arguments, counsel encouraged the Court to consider "the history and circumstances of the defendant" and "who Mr. Hennis is outside of the kik chats."  Docket No. 169 at 7.  Counsel discussed Mr. Hennis's lack of criminal history, his stable employment, and his lack of prior contact with children.  *Id.* at 12, 18.  Counsel also emphasized how Mr. Hennis poses a low to moderate risk of recidivism.  *Id.* at 7.  Judicial scrutiny of counsel's performance and trial strategy must be "highly deferential."  *Strickland*, 466 U.S. at 689.  Counsel made the reasonable strategic decision to focus most of his sentencing argument on the scope of Mr. Hennis's conduct compared to other child pornography cases to argue for a downward variance.  *See* Docket No. 169 at 2-21.

Even if counsel's performance were deficient, Mr. Hennis has failed to show that the alleged omissions resulted in an increased sentence. *See Glover*, 531 U.S. at 203-04. As stated before, Mr. Hennis's advisory guideline range was 324-405 months, and the Court imposed a bottom of the guideline sentence of 324 months. Docket No. 169 at 58-59, 70. The Court denied the downward variance due to the severity of the crime. *Id*. at 67-68. The Court recognized that Mr. Hennis had a commendable job history and little criminal history, but noted that these factors were not "material to the sentencing in this case" because the "typical person being sentenced for child pornography has a criminal history category of zero." *Id*. at 59. Therefore, additional character mitigation evidence, such as letters from Mr. Hennis's friends and family, would not have altered the Court's sentence. The Court finds that Mr. Hennis has shown neither deficiency nor prejudice from counsel's failure to present character mitigation evidence, and thus rejects claim six.

### 8. Certificate of Appealability and Evidentiary Hearing

Under Rule 11(a) of the Section 2255 Rules, a "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(2), the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." Such a showing is made when "a prisoner demonstrates 'that jurists of reason would find it debatable' that a constitutional violation occurred, and that the district court erred in its resolution." *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In the present case, the Court concludes that

Mr. Hennis has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will deny a certificate of appealability.

The court shall hold a hearing on the motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "District courts are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim." *United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004). The Court has found that Mr. Hennis has not met either prong of the *Strickland* test and he has offered no explanation of what testimony he would present at a hearing. Therefore, the Court finds that a hearing is not required.

## III.   CONCLUSION

For the reasons discussed above, it is

**ORDERED** that Mr. Hennis's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [Docket No. 174] is **DENIED**. It is further

**ORDERED** that Defendant's Motion to Stay and Leave to Amend His 2255 Motion Pursuant to F.R.C.P. 15(D) [Docket No. 186] is **DENIED**. It is further

**ORDERED** that Mr. Hennis's Motion to Dismiss Indictment Pursuant to Fed. R. Civ. P. 12(b) for Lack of Subject Matter Jurisdiction and Violation of Constitutional Rights [Docket No. 187] is **DENIED** for lack of jurisdiction. It is further

**ORDERED** that the United States' Motion to Exceed Page Limit for Response to § 2255 Motion [Docket No. 183] is **GRANTED**. It is further

**ORDERED** that Mr. Hennis's Motion for Default Judgment and Dismissal of Indictment for Failure to Defend or Respond [Docket No. 190] is **DENIED**. It is further

**ORDERED** that Mr. Hennis's proposed amended § 2255 motion [Docket No. 208-1] is **STRICKEN**.  It is further

**ORDERED** that, under 28 U.S.C. § 2253(c)(2) and the Rules Governing Section 2255 Proceedings for the United States District Courts, a certificate of appealability is **DENIED**.

DATED December 8, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge